[Civ. No. 63895. Second Dist., Div. Five. Aug. 9, 1982.]

LAWRENCE MICHAEL PAIGE, a Minor, etc., et al., Plaintiffs and Appellants, v.
NORTH OAKS PARTNERS et al., Defendants and Respondents.

**COUNSEL**

Albert I. Kaufman for Plaintiffs and Appellants.

McGahan & Engle, Mary E. Schroeder, Omansky & Lazarus and Leonard Harvey Lazarus for Defendants and Respondents.

**OPINION**

**ASHBY, J.**—In this action for personal injury, plaintiffs appeal from a summary judgment in favor of defendants.

From the pleadings and the declarations on the motion for summary judgment, the facts are as follows. Plaintiff Lawrence Michael Paige (hereinafter plaintiff), age 11, sues through his guardian ad litem, his mother, Linda Paige, who also sues on her own behalf for medical expenses incurred. Defendant K & G market operates a market at premises leased from defendant North Oaks Partners, doing business as North Oaks Plaza, a retail shopping center in Thousand Oaks. In an area behind the K & G market, designated as a common facility in the lease, defendant Mark Roessler dba Mark Roessler Building and Con-

struction Company, as general contractor, was engaged in a construction project for repair and alteration of the premises. There was an open trench in the construction area. The accident occurred on Sunday, April 29, 1979; the trench had been there since Friday, April 27.

Sunday morning plaintiff, then age 10, and his friends went to the construction area on their bicycles. They played a bicycle chasing game called "stop that pidgeon," which involved attempting to tag each other while riding. They jumped over the trench on their bicycles. While chasing his friends the third time around, plaintiff came in at the wrong angle. He attempted to stop, but fell in the trench, suffering injury.

Summary judgment was granted in favor of defendants on the ground that they are immune from liability under Civil Code section 846 which provides in pertinent part: "An owner of any estate . . . in real property, . . . owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purpose, except as provided in this section."[1]

---

[1] In full, Civil Code section 846 currently provides: "An owner of any estate or any other interest in real property, whether possessory or nonpossessory, owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purpose, except as provided in this section.

"A 'recreational purpose,' as used in this section, includes such activities as fishing, hunting, camping, water sports, hiking, spelunking, sport parachuting, riding, including animal riding, snowmobiling, and all other types of vehicular riding, rock collecting, sightseeing, picnicking, nature study, nature contacting, recreational gardening, gleaning, winter sports, and viewing or enjoying historical, archaeological, scenic, natural, or scientific sites.

"An owner of any estate or any other interest in real property, whether possessory or nonpossessory, who gives permission to another for entry or use for the above purpose upon the premises does not thereby (a) extend any assurance that the premises are safe for such purpose, or (b) constitute the person to whom permission has been granted the legal status of an invitee or licensee to whom a duty of care is owed, or (c) assume responsibility for or incur liability for any injury to person or property caused by any act of such person to whom permission has been granted except as provided in this section.

"This section does not limit the liability which otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or (b) for injury suffered in any case where permission to enter for the above purpose was granted for a consideration other than the consideration, if any, paid to said landowner by the state, or where consideration has been received from others for the same purpose; or (c) to any persons who are expressly invited rather than merely permitted to come upon the premises by the landowner.

"Nothing in this section creates a duty of care or ground of liability for injury to person or property."

## DISCUSSION

■ We hold that Civil Code section 846 is not applicable in the circumstances of this case. The purpose of this statute, enacted in 1963, was to encourage owners to allow the general public to use their land for recreational purposes by relieving such owners of the tort duties which might otherwise arise from such permission. (*Gerkin v. Santa Clara Valley Water Dist.* (1979) 95 Cal.App.3d 1022, 1025-1027 [157 Cal.Rptr. 612]; *Parish v. Lloyd* (1978) 82 Cal.App.3d 785, 787-788 [147 Cal.Rptr. 431]; *English v. Marin Mun. Water Dist.* (1977) 66 Cal.App.3d 725, 731 [136 Cal.Rptr. 224]; *Phillips v. United States* (9th Cir. 1979) 590 F.2d 297, 299 [construing California law]; 38 State Bar J. 647 (1963); Note, *Tort Liability of Agricultural Landowners to Recreational Entrants* (1978) 11 U.C. Davis L.Rev. 367, 368.) The legislative policy was "to reduce the growing tendency of landowners to withdraw land from recreational access by removing the risk of gratuitous tort liability that a landowner might run unless he could successfully bar any entry to his property for enumerated recreational uses." (*English v. Marin Mun. Water Dist., supra*, 66 Cal.App.3d at p. 731.)

In light of the purposes of the statute it is inconceivable that the Legislature intended it to apply to a case such as this one. When the statute was enacted in 1963, five years before the landmark decision in *Rowland v. Christian* (1968) 69 Cal.2d 108, 118-119 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], the duties of a landowner toward a person coming on the land depended upon the status of the person as invitee, licensee or trespasser. The statute directed itself to these distinctions, providing specifically that the granting of permission to use the premises for a recreational purpose did not give the entrant the legal status of invitee or licensee. However, at the time of the statute's enactment the doctrine of attractive nuisance provided an exception, where the injured person was a trespassing child, to what would otherwise be a rule of nonliability as to trespassers. (*Beard v. Atchison, Topeka & Santa Fe Ry. Co.* (1970) 4 Cal.App.3d 129, 135-136 [84 Cal.Rptr. 449].) In attempting to provide access for the public to open spaces for recreational use, the Legislature could not have intended to encourage owners and building contractors to allow children to play on their temporary construction projects.

The statute must be given a reasonable construction in light of its purposes. In *Gerkin v. Santa Clara Valley Water Dist., supra*, 95 Cal.

App.3d 1022, 1025-1027, the court rejected an attempt to apply the statute literally in a situation where it was not warranted. There the defendant had argued that because the plaintiff was walking across defendant's property, the plaintiff was therefore "hiking" within the meaning of the statute. The court commented that "'[i]t is a cardinal rule that statutes should be given a reasonable interpretation and in accordance with the apparent purpose and intention of the lawmakers,'" and that "a purely literal interpretation of any part of a statute will not prevail over the purpose of the legislation." Whether the plaintiff was hiking within the meaning of the statute, the court said, depended upon "a consideration of the totality of facts and circumstances, including the path taken, the length and purpose of the journey, the topography of the property in question, and the prior use of the land. While the plaintiff's subjective intent will not be controlling, it is relevant to show purpose." (*Id.*, at p. 1027.)

Here, although plaintiff's purpose was undoubtedly recreational, the nature of the property in question shows that it is not within the intent of section 846. We find nothing in any legislative history to suggest that the Legislature intended to relieve all landowners of liability to trespassing children, whose activities usually are recreational. The fact that the words of section 846 could constitutionally be interpreted literally so as to apply to this case (*Lostritto* v. *Southern Pac. Transportation Co.* (1977) 73 Cal.App.3d 737, 749 [140 Cal.Rptr. 905]), does not mean that they should be so interpreted. A similar problem has been faced by the courts of New Jersey under their landowner immunity statute. Although the statutory language applied broadly to "premises," the court refused to apply the statute literally to a residential swimming pool in *Boileau* v. *De Cecco* (1973) 125 N.J.Super. 263 [310 A.2d 497], affd. (1974) 65 N.J. 234 [323 A.2d 449].) The court stated: "We cannot presume a grant of tort immunity to the owners of thousands of swimming pools in residential areas until we determine that it was the intent of the Legislature at the time of enactment of the statute to do so." (310 A.2d at p. 499.) Referring to the statute's listing of specific recreational activities, similar to the second paragraph of our Civil Code section 846, the court commented: "The activities listed are for the most part those conducted in the true outdoors, not in someone's backyard. It is true that 'swimming' is included in this list, but it should be considered in the context in which it is found." (*Id.*, pp. 499-500.) Subsequently the New Jersey Supreme Court reiterated the *Boileau* view in *Harrison* v. *Middlesex Water Co.* (1979) 80 N.J. 391 [403

A.2d 910]. Referring to the types of activities encompassed by the statute, the court said: "These are endeavors which can be accommodated, under normal conditions, only upon large sized tracts of rural or semi-rural lands, or other lands having similar characteristics. [¶] Owners of such properties would have difficulty in defending their lands from trespassers or, indeed, even in taking precautions to render them safe for invited persons, engaging in these kinds of energetic outdoor activities. The public policy to afford these property owners a modicum of protection from tort liability may be thought of as one which would encourage such owners to keep their lands in a natural, open and environmentally wholesome state. This is an important policy in view of the substantial and seemingly relentless shrinkage and disappearance of such land areas from the face of our State.... This purpose was assuredly intended to be served by the Legislature in structuring the current Landowner's Liability Act. The Act, in our view, would clearly go beyond these goals were it construed to grant a blanket immunity to all property owners, particularly to those owning lands in densely populated urban or suburban areas, without regard to the characteristics of their properties. [¶] We would not be warranted in imputing to the Legislature an intent to fashion such a broad immunity to property owners.... [¶] ... Decisions which totally disregard the use for which the land is zoned, the nature of the community in which it is located, its relative isolation from densely populated neighborhoods, as well as its general accessibility to the public at large, take too expansive a view of the immunity conferred by the Legislature." (403 A.2d at pp. 914-915.)

We do not cite *Harrison* for the general rule it adopts as to urban versus rural land, but because it illustrates that the purposes of the statute should prevail against a broad literal interpretation of its language. (*Gerkin v. Santa Clara Valley Water Dist., supra*, 95 Cal.App.3d at p. 1027.) We have no occasion to go beyond the facts of this case: a child injured while jumping over an open trench in a temporary construction project near the loading dock of a market in an urban shopping center. We hold simply that under the circumstances of this case, this is not the type of property to which the statute was intended to apply.

Whether defendants are liable to plaintiffs should be determined not by this statute but by general principles of negligence. (Civ. Code, § 1714; *Rowland v. Christian, supra*, 69 Cal.2d at pp. 118-119; *Beard*

v. *Atchison, Topeka, & Santa Fe Ry. Co., supra*, 4 Cal.App.3d at pp. 136-141.)

The judgment is reversed.

Stephens, Acting P. J., and Hastings, J., concurred.

A petition for a rehearing was denied September 8, 1982, and respondents' petitions for a hearing by the Supreme Court were denied October 13, 1982. Kaus, J., did not participate therein. Richardson, J., was of the opinion that the petitions should be granted.