Lialan M. THOMAS, Plaintiff,

v.

COLECO INDUSTRIES, INC., et al.,
Defendant/Third–Party Plaintiff

v.

Susan YOUNG, et al.,
Third–Party Defendant.

No. C85–1865.

United States District Court,
N.D. Ohio, E.D.

Sept. 17, 1987.

---

Joseph A. Condeni, Jerome & Smith, Cleveland, Ohio, for plaintiff.

Thomas A. Dugan, Jeffrey W. Van Wagner, Ulmer, Berne, Laronge, Glickman & Curtis, Cleveland, Ohio, for defendant and third party plaintiff.

George W. Lutjen, Davis & Young Co., Cleveland, Ohio, for third-party defendant.

## MEMORANDUM OPINION AND ORDER

BATTISTI, Chief Judge.

Plaintiff Lialan M. Thomas commenced this diversity case against defendant Coleco Industries, Inc. ("Coleco") on July 3, 1985. Her complaint avers that she was severely injured when she dove into an above-ground swimming pool. Plaintiff alleges that defendant negligently designed and manufactured the pool, failed to warn consumers adequately of certain dangerous conditions, and breached express and implied warranties of fitness. She seeks $1,000,000 in damages for emotional and physical injury suffered, including a fracture of the neck and injuries to the head and spinal cord area.

Defendant filed a third-party complaint on February 19, 1987 against Susan Young and Duane Young, owners of the above-ground pool and the property on which it was located. Coleco seeks indemnification from the Youngs, alleging that their negligence was the direct and proximate cause of plaintiff's injuries. On July 6, 1987, third-party defendants filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The motion is hereby granted.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Based on the papers filed in this case, the Court finds that the following material facts are uncontroverted:

1. Plaintiff, a twenty-one-year-old woman, arrived with a companion early in the morning of July 3, 1983 at the home of Susan and Duane Young. Plaintiff and her companion had been invited to spend the Fourth of July weekend at the Youngs' home at 2951 Lilac Court in Perry, Ohio, a residential area in Lake County.

2. The Youngs owned and maintained an above-ground swimming pool, which was located in the backyard of their property.

3. At approximately 2:00 a.m. on July 3, the Youngs and their two guests decided to go swimming in the above-ground pool. The Youngs and plaintiff's companion jumped into the pool feet first. Plaintiff entered the pool by diving head first.

4. Plaintiff was immediatley admonished by Susan Young, who told her "we don't allow diving and please don't do it again." (Deposition of Susan Young, p. 13). She explained to plaintiff that the water was too shallow for diving. Duane Young also asked plaintiff not to dive into the pool because it was not deep enough.

5. Despite these warnings, plaintiff again dove into the pool later that morning. Plaintiff alleges she received severe physical and emotional injury as a result of the dive.

### A.

Third-party defendants claim that they are absolutely immune from liability for plaintiff's injuries under Section 1533.18.1 of the Ohio Revised Code, which provides:

No owner, lessee, or occupant of premises:

1. Owes any duty to a recreational user to keep the premises safe for entry or use;

2. Extends any assurance to a recreational user, through the act of giving permission, that the premises are safe for entry or use;

3. Assumes responsibility for or incurs liability for any injury to person or property caused by any act of a recreational user.

Section 1533.18 provides:

(A) "Premises" means all privately-owned lands, ways, waters, and any buildings and structures thereon, and all state-owned lands, ways, and waters leased to a private person, firm, organization, or corporation, including any buildings and structures thereon.

(B) "Recreational user" means a person to whom permission has been granted, without the payment of a fee or consideration to the owner, lessee, or occupant of premises, other than a fee or consideration paid to the state or any agency thereof, to enter upon premises to hunt, fish, trap, camp, hike, swim, or engage in other recreational pursuits.

Ohio courts are divided regarding the applicability of Section 1533.18.1 to privately owned swimming pools in residential areas. In *Florek v. Norwood,* 25 Ohio App. 3d 47, 495 N.E.2d 585 (Cuyahoga County, 1985), the Ohio Court of Appeals affirmed a lower court summary judgment ruling on the ground that owners of an above-ground swimming pool are absolutely immune from liability to a guest who dives head first into the pool. The court held that the plain language of the statute "establishes that a private property owner owes no duty to a recreational user of the property." *Id.* at 48. In *Hager v. Griesse,* 29 Ohio App.3d 329, 505 N.E.2d 982 (Licking County, 1985), the Court of Appeals held that, although "the statute is 'inartfully drafted'" and is "generally considered to be applicable primarily to more remote areas for the sport of hunting and fishing," it applies to invited guests at a private swimming pool. *Id.* at 332, 505 N.E.2d 982.

The Court of Appeals reached a different conclusion in *Loyer v. Buchholz,* Slip Opinion, No. E–87–5 (Ohio App., July 17, 1987) [Available on WESTLAW, OH–CS database]. The court held that Section 1533.-18.1 does not extend to residential landowners who invite guests to swim in their pool. Citing law review articles and numerous decisions in other states that have enacted similar legislation, the court found that the purpose of recreational use statutes was to supplement federal and state park systems by encouraging rural landowners to open their private land for recreational use by the general public. *Id.* A grant of immunity from liability was viewed as the quid pro quo for owners who made their private land available for public recreation free of charge. *Id.* Noting that the statute is contained in Title 15 of the Ohio Revised Code, which is devoted to the conservation of natural resources and the protection of wildlife, the court concluded that it is limited in its application to "essentially undeveloped land and water areas (primarily rural or semi-rural land, water or marsh)." *Id.* (citing *Gibson v. Keith,* 492 A.2d 241 (Del.1985)).

■ This Court agrees with the holding in *Loyer.* Although no record is available to demonstrate the Ohio legislature's intent in enacting Section 1533.18.1, it is suggested by other legal authority. The statute is similar to a model act proposed by The Council of State Governments in 1965. *The Council of State Governments, Suggested State Legislation,* Vol. XXIV (1965). The comments attached to the model act state:

Recent years have seen a growing awareness of the need for additional recreational areas to serve the general public. The acquisition and operation of outdoor recreational facilities by governmental units is on the increase. However, large acreages of private land could add to the outdoor recreation resources available.... [I]n those circumstances where private owners are willing to make their land available to members of the general public without charge, ... every reasonable encouragement should be given to them.

*Id.* at 150. Recreational use statutes, such as the model act and Section 1533.18.1, were intended to supplement government park systems by inducing private land-

owners to open their land to the general public without charge. Providing such an inducement to the residential owner of a swimming pool would not further this goal.

The Ohio legislature's intent is further evidenced by the statute's inclusion in Title 15 of the Revised Code, entitled "Conservation of Natural Resources", and Chapter 1533, covering hunting and fishing. Had the legislature intended Section 1533.18.1 to apply to private swimming pools in urban or residential areas, it would not have placed it with statutes dealing solely with natural resources and wildlife. In addition, the nature of the activities of a "recreational user"—hunting, fishing, trapping, camping, hiking, and swimming—suggests that the statute was meant to apply to rural or semi-rural tracts of undeveloped land where the public can engage in these outdoor sports. Although "swimming" is included in the list, it must be considered in context with the other terms of the statute. The remaining activities occur "in the true outdoors, not in someone's backyard." *Boileau v. De Cecco*, 125 N.J.Super. 263, 310 A.2d 497, 500 (1973).

Several state courts have ruled on the scope of recreational use statutes, which have been enacted in forty-seven states. *Gibson*, 492 A.2d at 248. For example, the Delaware Supreme Court held that its recreational use statute was inapplicable to "urban or residential areas improved with swimming pools, tennis courts and the like." *Id.* at 248. The Court of Appeals of Georgia similarly concluded that the legislation was not intended "to apply to the friendly neighbor who permits his friends and neighbors to use his swimming pool without charge." *Herring v. Hauck*, 118 Ga.App. 623, 165 S.E.2d 198, 199 (1968).

The Supreme Court of Wisconsin found that the purpose of the recreational use statute was to encourage private owners of forest and farmlands to open their land for public outdoor recreation. *LePoidevin v. Wilson*, 111 Wis.2d 116, 330 N.W.2d 555, 562 (1983). The court observed that the state legislature had apparently decided that "the social good of encouraging landowners to open their land to the public for recreational purposes outweighs the social cost of imposing the expense of injuries on the entrant to the land." *Id.*

These state court interpretatons, together with the language of Section 1533.18.1 and its location in the Ohio Revised Code, persuades the Court that the statute was not intended to provide immunity to the owner of a private swimming pool in an urban or residential area.[1] The statute thus does not apply to the Youngs.

### B.

Since this Court concludes that Section 1533.18.1 does not provide immunity to owners of private swimming pools, the statute does not abrogate the common law duty of care owed by third-party defendants to plaintiff. The applicable standard of care is defined by the host-social guest relationship. In most jurisdictions, a social guest is regarded as a licensee, sometimes referred to as a bare or gratuitous licensee. 88 C.J.S. Negligence § 63 (134) (1966). Under Ohio law, however, the relationship between a host and a social guest is not equivalent to the licensor-licensee relationship. The duty owed by a host to a social guest is:

to exercise ordinary care not to cause injury to his guest by any act of the host or by any activity carried on by the host while the guest is on the premises ... [and]

to warn the guest of any condition of the premises known to the host and which one of ordinary prudence and foresight in the position of the host should reasonably consider dangerous, if the host has reason to believe that the guest does not know and will not discover such dangerous condition.

---

1. If the Court were to conclude that the recreational use statute extends to the owner of private swimming pools in residential areas, the statute effectively would repeal the common law duty owed to a social guest, while maintaining the duty owed a trespasser. *Hager*, 29 Ohio App.3d at 332, 505 N.E.2d 982. This situation, where a trespasser is owed a higher duty than a social guest, could not have been intended by the Ohio legislature.

*Scheibel v. Lipton,* 156 Ohio St. 308, 102 N.E.2d 453, 463 (1951). The Supreme Court of Ohio added that "a host is not an insurer of the safety of a guest while upon the premises of the host and ... there is no warranty, express or implied, on the part of the host that the premises to which the guest is invited by him are in safe condition." *Id.*

Coleco does not allege that third-party defendants were negligent under the first standard of care set forth in *Scheibel.* No facts have been presented suggesting that any act of the Youngs caused plaintiff's injury.

Regarding the duty to warn, Coleco alleges that the Youngs failed to provide adequate warning to plaintiff of the danger of diving into the above-ground swimming pool. On motion for summary judgment, a court must view evidence in a light most favorable to the party opposing the motion. *U.S. v. Articles of Device Consisting of Three Devices "Diapulse",* 527 F.2d 1008, 1011 (6th Cir.1976). For the purposes of the summary judgment motion before the Court, therefore, the Court presumes that the Youngs were aware of the danger of diving into their pool, that plaintiff was unaware of the danger, and that the Youngs had reason to believe that plaintiff did not know and would not discover the danger. Under these circumstances, the Youngs owed a duty to warn plaintiff of the dangerous condition pertaining to the swimming pool.

Coleco contends that whether the Youngs acted negligently by failing to warn plaintiff adequately is a question of fact that cannot be resolved on a motion for summary judgment. Although summary judgment is rarely appropriate in negligence actions, it is warranted where only one conclusion may be reasonably drawn from the undisputed facts. *Flying Diamond Corp. v. Pennaluna & Co., Inc.,* 586 F.2d 707, 713 (9th Cir.1978). A court may properly grant summary judgment where it determines, as a matter of law, that de-

fendant discharged its duty to warn plaintiff. *Adams v. Union Carbide Corp.,* 737 F.2d 1453, 1457 (6th Cir.1984).

It is difficult to conceive of a clearer warning than those given by third-party defendants to plaintiff instructing her not to dive into the pool. Explaining that the water level was too low, Susan Young told plaintiff: "we don't allow diving and please don't do it again." Her warning was reiterated by Duane Young. Based on these undisputed facts, no reasonable person could conclude that the hosts failed to provide an adequate warning to plaintiff. Plaintiff's injury, which was the result of diving into the pool less than ten hours after being warned not to do so, was not proximately caused by any failure to warn by third-party defendants.[2]

Summary judgment is hereby granted to third-party defendants Susan and Duane Young.

IT IS SO ORDERED.

---

2. Although the Youngs did not warn plaintiff before her initial dive at approximately 2:00 a.m. on July 3, 1983, this failure to warn did not cause any injury to plaintiff. She received adequate warnings before again diving into the pool several hours later, which dive resulted in the injuries alleged in plaintiff's complaint.