[Civ. No. 18468. Fourth Dist., Div. One. Aug. 29, 1979.]

RICHARD SMITH, Plaintiff and Appellant, v.
SCRAP DISPOSAL CORPORATION, Defendant and Respondent.

## Counsel

Schneidewind & Schiefelbein and Merle N. Schneidewind, for Plaintiff and Appellant.

Stephen R. Mulligan and Diana Myers, for Defendant and Respondent.

## Opinion

**WIENER, J.**—Richard Smith (Smith) sued Scrap Disposal Corporation (Scrap) for negligence. Defendants successfully moved for summary

judgment on the grounds that Civil Code section 846 barred recovery.[1] For reasons which we will discuss, we have concluded plaintiff did not enter defendant's property to fish and, whether he entered for the purpose of vehicular riding presents a triable issue of fact. We reverse the judgment.

Scrap, under a tideland use and occupancy permit, granted by the San Diego Unified Port District (District), was entitled to store and stock pile metals on a portion of the National City Marine Terminal. The area specifically designated in the permit was a 4-acre rectangular parcel, approximately 174,291 square feet, located 70 feet from the northern border and 80 feet from the western border of the terminal. Both terminal boundaries were adjacent to the ocean at San Diego Bay. The strips of land adjacent to the water and contiguous to the property described in the permit was part of the common area under the direct supervision of the District. Although not expressly described in the permit, Scrap used the adjacent property for ingress and egress, in addition to using the roads, wharfs, berths, aprons and railroad tracks for the loading and unloading of ships and the movement of scrap metal both into and out of the designated storage area.

Smith and two friends entered the National City Marine Terminal Sunday morning, February 1, 1976, to go fishing. They entered the terminal through a gate, drove westerly along the northern boundary of the terminal adjacent to the land described in the permit, until they reached the water's edge, turned left, continued for approximately 100 feet adjacent to Scrap's property, and stopped there to fish. When they finished fishing several hours later, plaintiff drove his car containing his two companions along the same route to return home. After plaintiff had driven approximately 50 to 100 feet, one of his friends jumped out of the slowly moving vehicle. He said he wanted to go for a ride on a bulldozer which was parked on Scrap's portion of the terminal. Plaintiff testified in his deposition he attempted to stop his friend from using the bulldozer because he had to get home. While he was standing on the bulldozer, his

---

[1]All references are to the Civil Code unless otherwise indicated.

During the period in question, section 846 provided in pertinent part: "An owner of any estate in real property owes no duty of care to keep the premises safe for entry or use by others for fishing, hunting, camping, water sports, hiking, spelunking, riding, including animal and all types of vehicular riding, rock collecting, or sightseeing or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purposes, except as provided in this section." A 1978 amendment substituted "any recreational purpose" for the activities enumerated in the previous versions of the statute. (Stats. 1978, ch. 86, § 1, p. 221.)

companions pressed some buttons which put the machine in motion, causing him to fall off. He was injured when the bulldozer fell on his stomach.

■    Defendant first argues that section 846 bars plaintiff's cause of action for negligence because he entered defendant's property to ride a vehicle. Whether a summary judgment should be granted turns on the trial court's consideration of " 'whether the defendant (or the plaintiff) has presented any facts which give rise to a triable issue. The court may not pass upon the issue itself . . . . The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial.' " (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 851 [94 Cal.Rptr. 785, 484 P.2d 953].) "[T]he affidavits of the moving party are to be strictly construed and those of the opponent liberally construed." (*Chern* v. *Bank of America* (1976) 15 Cal.3d 866, 873 [127 Cal.Rptr. 110, 544 P.2d 1310].) "Summary judgment may only be granted if no material fact issue remains in the case. Where affidavits have been submitted by the opposing parties, any doubts as to whether summary judgment is proper should be resolved against the moving party. [Citation.]" (*Buehler* v. *Oregon-Washington Plywood Corp.* (1976) 17 Cal.3d 520, 526 [131 Cal.Rptr. 394, 551 P.2d 1226].) In accordance with these rules, whether plaintiff went onto defendant's property for the sole purpose of discouraging his companions from trespassing and to dissuade them from using the bulldozer, or joined with them in riding it raises a question of fact which requires a trial.

■    Defendant also asserts as an independent ground in support of the judgment that since plaintiff's main purpose that day was to go fishing, section 846 precludes recovery. Defendant concedes the strips of land adjacent to the property restricted to its use under the permit was common area used by itself and others. Nevertheless, because of its real property interest—its implied-in-law easement—section 846 should apply. The parties have briefed the issue of whether an easement is an "estate in real property" as required by the statute or only an "interest in real property," and thus outside the statute.[2] We decline to rest our conclusion on the technicalities of common law rules of real property, preferring to base our holding on the statute's purpose and on consideration of the interests it was meant to protect.

[2]This question was answered in *Darr* v. *Lone Star Industries, Inc.* (1979) 94 Cal.App.3d 895 [157 Cal.Rptr. 90]. The court held that as a matter of law, an easement did not amount to an ownership of any estate in real property within the meaning of section 846 and thus defendant could not invoke the protection of the statute. This decision is not yet final and accordingly, we do not rely on it.

The reason the Legislature enacted section 846 was to reduce landowner tendency to remove real property from recreational access. (*English* v. *Marin Mun. Water Dist.* (1977) 66 Cal.App.3d 725, 731 [136 Cal.Rptr. 224].) Such exemption from tort liability promotes the use of private land for general public recreational use. (*Parish* v. *Lloyd* (1978) 82 Cal.App.3d 785, 787 [147 Cal.Rptr. 431]; *Lostritto* v. *Southern Pac. Transportation Co.* (1977) 73 Cal.App.3d 737, 749 [140 Cal.Rptr. 905].)

Here, Scrap, as tenant, had the right to bar access to its portion of the terminal. As an easement holder, it also had the right to protect its interest against interference by third persons. (Rest., Property, ch. 37, § 450, p. 2901.) It did not, however, have the right to require the District to prevent access to the common area to all potential recreational users. Accordingly, had the injury occurred in the common area in which Scrap had a miniscule property interest and over which it had no duty of maintenance or control, the statute would probably not apply. Since the alleged injury took place where Scrap had the duty of maintenance, control and the right to bar ingress, it serves the statutory purpose to invoke its protection provided the entry to that portion of the terminal was for the protected recreational purpose. Whether the statute applies to Scrap will turn on the factual question of plaintiff's intent when he entered the storage area, which is not appropriately resolved on a summary judgment motion.

If plaintiff had been driving on a public thoroughfare returning from a fishing trip and stopped to go across Scrap's land for a nonrecreational purpose, Scrap's present argument would be unavailing. The underlying purpose of the trip could not be used to shield it from liability. As a practical matter, the case before us is the same. The strips of property were common areas used as roads to permit vehicular and pedestrian access for tenants and others using the terminal. Plaintiff left the "road" and entered Scrap's property to do something other than to fish.

Judgment reversed.

Brown (Gerald), P. J., and Focht, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.